# NEW JERSEY MISCELLANEOUS REPORTS.    9

N. J. Dept. Labor—Doctor v. Royal Silk Mills.

NEW JERSEY DEPARTMENT OF LABOR.
WORKMEN'S COMPENSATION BUREAU.

## ISADORE DOCTOR, PETITIONER, v. ROYAL SILK MILLS, RESPONDENT.

**Injury On Head Resulting From Being Struck By a Shuttle of a Silk-weaving Loom—Petitioner Continued Working For the Day, But Suffered From Head Aching—Serious Affection of Eyes Developed—Testimony Examined and Injury Held to Have Resulted During Employment.**

\*        \*        \*        \*        \*        \*        \*

The proof given in this case by the petitioner was that he worked as a broad silk weaver for sixteen years; that he had obtained employment from the respondent as a silk weaver and operated three looms; that on December 24th, 1924, a shuttle struck him on his head and that he did not know which loom it came from; that this accident occurred between nine and ten o'clock in the morning, and afterwards he continued to work with difficulty, and that night of the accident, because of severe headache, he went to Dr. Joelson. Petitioner testified that he continued to work on December 26th, but his eyes began to blink, and he continued to work because of his eye difficulties for a period of five days; that he was sent to the Neurological Institute, New York, by Dr. Joelson, where he went seven times and was given electrical treatments; that he informed Dr. Behrman, one of the officers in the mill, of the accident, and continued to work with the expectation that the condition would pass away, and worked until January 12th, 1925. Petitioner further testified that while he was working he spoiled goods he was working on, and complaints were made against him by Mr. Berman for poor workmanship; that he called on Dr. Wassing, a neurologist, and that his condition is somewhat improved, but that he cannot work. Petitioner further testified that he has lost sixteen pounds and that he feels sick; that he attends the rehabilitation clinic daily. Petitioner also testi-

fied that Abraham Yelline, who worked an adjoining loom, was near his loom when the accident happened; that Mr. Yellin picked the shuttle up, although petitioner did not remember whether it was the shuttle from his loom or from Mr. Yellin's loom. Petitioner testified that he has to lift his lids in order to see, and that he must wear colored glasses. Petitioner further testified that the loom guards came up to the nipple line, and petitioner testified that shuttles can fly over these guards.

Abraham Yellin testified that he worked as a weaver in the premises of the respondent, and had adjoining looms to petitioner; that he remembered picking up a shuttle from the floor; that he asked the petitioner whether it had hit him, and he said that it did.

Petitioner's wife, Rose Doctor, testified that her husband was never sick before, or had any trouble with his eyes before the accident.

Mr. Behrman testified that he was secretary and treasurer of the respondent company, and that petitioner told him of the accident. Under cross-examination he testified that loom guards are over four feet from the floor, and that there is a distance of three to four inches between the columns and guards, and that there is an opportunity for the shuttle to pass between the post and guard or screen.

Petitioner called Dr. Hans Wassing, who is a neurologist, who says he examined petitioner, and that petitioner gave him a history of being healthy up to the time of being struck in the forehead by the shuttle, and he diagnosed the case as traumatic neurosis or ptosis, or a falling down of the upper eyelids with impossibility to raise them, and that it is a progressive condition, is uncertain, and that the petitioner requires treatment; that petitioner's condition was due, in his opinion, to the striking of the shuttle. In addition to the eye condition, petitioner is suffering from trumatic neurosis. Every bilateral ptosis the witness saw was traumatic in origin. The condition of the lower eyes (circular muscles) is a cramped one. That petitioner is suffering in both eyes from both ptosis and cramped condition of the lower eyelids;

that condition is due to shock and not to organic lesion. On second examination, witness testified, that petitioner was getting worse, and there was a marked neurasthenia; the eyes themselves are normal, except for a small amount of myopia, and that, in his opinion, petitioner was one hundred per cent. disabled to work, when he saw him in March, 1925.

Petitioner called Dr. Morris Samuel Joelson, who testified that he examined petitioner, who gave him a history of being struck in the head with a shuttle, and that he observed a red swelling above the nose, and that he had blinking of the eyelide, and then ptosis developed; that he treated him for three weeks and sent him to New York for neurological treatment.

The respondent called Charles Meyers, safety engineer for the Globe Indemnity Company, who testified to a sketch made of the premises of respondent and by the looms of the petitioner, which sketch was offered in evidence. He could not testify at all as to the tactics of shuttles, and knew nothing about action of looms or auxiliary machines and appliances.

The respondent called Dr. Elbert S. Sherman, who testified that petitioner was led into his office at Newark on May 19th, who gave him a history of the case, and also testified that it was nothing abnormal, except a contraction of the eyelids; that he could not get any idea of amount of vision on his eye-balls, as he rolled his lids up very much. Dr. Sherman admitted that a bilateral ptosis might be caused by a trauma.

Dr. Thomas Clay testified that petitioner came to the clinic; that he had been given a message by Dr. Joelson to have treatment at the rehabilitation clinic; that the first intimation he had of the accident was on February 17th, after petitioner had been treated at the clinic a number of times; that it was a case for a competent neurologist to pass on; that the petitioner had hysteria or traumatic neurasthenia, and that a bilateral ptosis may result from trauma, and usually is, and that improvement might be brought about by auto suggestion.

Sarah Lennon, called by the respondent, testified that petitioner did not call her attention to the accident.

7. From the evidence produced I am satisfied· that the petitioner ·sustained an accident arising out of and in the course of his employment, and find, therefore, that the petitioner is entitled to compensation for a period beginning January 12th, 1925, until June 4th, 1925, for temporary disability, and I further find that the petitioner be allowed temporary disability for a period of one year beginning June 4th, 1925, until June 4th, 1926. If the improved condition of the petitioner does not warrant the continuance of temporary compensation payments as above indicated, the respondent shall have leave, upon notice to the petitioner, to bring on the matter for rehearing, otherwise the petitioner shall be entitled to have the final extent of temporary and permanent disability determined.

\*          \*          \*          \*          \*          \*          \*

HARRY J. GOAS,
*Deputy Commissioner.*